**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-cv-00224-GCM**

| | |
|---|---|
| BARRINGTON BOYD, ) <br> ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> TIAA-CREF INDIVIDUAL & ) <br> INSTITUTIONAL SERVICES, LLC ) <br> TEACHERS INSURANCE AND ) <br> ANNUITY ASSOCIATION OF AMERICA, ) <br> ) <br> **Defendants.** ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 8) filed with a Brief in Support of Motion to Dismiss (Doc. No. 8-1) on June 26, 2017. On July 10, 2017 Plaintiff filed his Memorandum in Opposition to the Motion to Dismiss (Doc. No. 9). Defendants filed a Reply in Support of Motion to Dismiss on July 21, 2017. (Doc. No. 11). For the following reasons, Defendants' Motion to Dismiss is **DENIED.**

## I. BACKGROUND

Plaintiff Barrington Boyd ("Boyd") is a licensed investment advisor with Series 7 and 66 qualifications. (Compl. at 2, ¶ 9). He is an African-American man. (Compl. at 2, ¶ 9). Boyd began working for Defendants Teachers Insurance and Annuity Association of America and TIAA-CREF Individual and Institutional Services, LLC (collectively, "TIAA") in June 2005, and his employment was terminated on March 15, 2015. (Compl. at 2, ¶¶ 10–11). On March 24, 2015, TIAA submitted to the Financial Industries Regulatory Authority ("FINRA") a Uniform

Termination Notice for Securities Industry Regulation ("U-5"). (Compl. at 2, ¶ 12). In the section on the U-5 form provided for "Termination Explanation," TIAA stated, "Did not meet internal performance expectations for position. No violation of industry rules, no customer harm, not securities related." (Compl. at 2, ¶ 12).

Boyd filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that TIAA discriminated against him on the basis of race, and on June 16, 2015, Boyd and TIAA participated in a mediation with the EEOC. (Compl. at 2, ¶ 13–14). As a result of that mediation, on June 26, 2015, Boyd and TIAA entered into a Separation Agreement and Release in Full ("Separation Agreement" or "the Agreement"). (Compl. at 2, ¶ 15). Pursuant to that Agreement, on July 22, 2015, TIAA submitted a revised U-5, replacing the language in the Termination Explanation section with "Disagreement regarding internal policy requirements for position. No violation of industry rules, no customer harm, not securities related." (Compl. at 3, ¶ 19). In the "Amendment Explanation" box immediately below the Termination Explanation, TIAA stated, "The failure to meet internal policy expectations precipitated a conversation with the employee as to what those expectations were and should be. Ultimately, it was the inability to reach an understanding as to what the job expectations were that resulted in the separation." (Compl. at 3, ¶ 20).

Boyd objected to the additional language in the Amendment Explanation, and TIAA again amended the U-5 on December 7, 2015, stating in the Amendment Explanation section, "Amended to accurately reflect the intent of the previous amendment." (Compl. at 3, ¶ 22–23).

Boyd alleges that he subsequently applied for numerous positions in the securities industry and was denied as a result of the inaccurate language provided in the U-5 form, as well as a result of negative references provided by TIAA. (Compl. at 4, ¶ 24–28).

On December 27, 2016, Boyd filed a Charge of Discrimination with EEOC asserting a claim of retaliation under Title VII of the Civil Rights Act of 1964. (Compl. at 4, ¶ 29). On January 23, 2017, the EEOC issued Boyd a Right to Sue Letter. (Compl. at 4, ¶ 30). On April 26, 2017, Boyd filed his Complaint alleging breach of contract and retaliation under Title VII. (Compl. at 4–5).

## II. LEGAL STANDARD

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Consideration of the Separation Agreement

Because both the breach of contract claim and the retaliation claim rely heavily on the terms of the Separation Agreement, the Court must decide, as a threshold issue, whether or not the Separation Agreement in its entirety may be considered at this stage of the litigation. Boyd referenced it extensively in his Complaint but did not attach the entire Separation Agreement to his Complaint. (*See* Compl. at 4–5). TIAA subsequently attached it to its Motion to Dismiss as

Doc. No. 8-2 and argues that the Court may consider it because it "directly gives rise to Boyd's claims and is expressly referred to in Boyd's Complaint." (Defs.' Br. at 6). Boyd likewise urges the Court to consider the Separation Agreement without converting Defendants' Motion into a motion for summary judgment.

The Fourth Circuit has held that "[a]lthough as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, . . . 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Because the Separation Agreement provides the basis for Boyd's claim, is referenced throughout the Complaint, and is not disputed, the Court concludes that it can consider the Agreement in its entirety in assessing the plausibility of Boyd's claims at this stage of the litigation.

**B. Breach of Contract**

Boyd's first cause of action is for breach of contract. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 590 (N.C. Ct. App. 2015) (quoting *Branch v. High Rock Lake Realty, Inc.*, 565 S.E.2d 248, 252 (N.C. Ct. App. 2002)).

Here, TIAA concedes that the Separation Agreement constitutes a valid contract. However, TIAA argues (1) that Boyd's breach of contract claim is barred by a release under the Separation Agreement, and (2) that even if Boyd did not release this claim, TIAA's actions—as alleged in Boyd's Complaint—do not establish a plausible claim for breach of contract.

4

First, TIAA asserts that Boyd's claim is barred by a release in Paragraph 3 of the Separation Agreement. Paragraph 3 of the Separation Agreement states:

> TIAA will file with the appropriate depository within the Financial Industry Regulatory Authority ("FINRA") the amended explanation of "discharged: disagreement regarding internal policy requirements for position. No violation of industry rules, no customer harm, not securities related" on your "Uniform Notice for Securities Industry Regulation" or "U-5." To be clear, you agree not to challenge in any way the accuracy and/or proprietary [sic] of the U-5 explanation above that TIAA will file with FINRA and to release TIAA pursuant to Paragraphs 11 and 12 below, from any claim related to the filing or content of that U-5 amendment.

(Separation Agreement, ¶ 3).

Paragraph 11(b), in turn, states, "This release of claims does not extend to your contractual right to enforce the terms of this Agreement or to any claims that may not be lawfully released." (Separation Agreement, ¶ 11(b)).

With respect to disputes over contract interpretation, "[a] contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *WakeMed v. Surgical Care Affiliates, LLC*, 778 S.E.2d 308, 312 (N.C. Ct. App. 2015) (quoting *Commscope Credit Union v. Butler & Burke, LLP*, 764 S.E.2d 642, 651 (N.C. Ct. App. 2014)). On its face, Paragraph 3 unambiguously prevents Boyd from challenging the "accuracy and/or proprietary [sic]" of the agreed-upon language of the "amended explanation" to be filed in the U-5, thus protecting TIAA from future lawsuits challenging that *specific* language. Nowhere does it prevent Boyd from suing to compel TIAA to submit the U-5 with the agreed-upon language or from suing for damages based on TIAA's failure to submit the U-5 with agreed-upon language. Further, Paragraph 11 unambiguously preserves Boyd's right to file suit to enforce the terms of the Separation Agreement, including TIAA's promise in Paragraph 3 to amend the U-5 to reflect the agreed-upon language.

5

Boyd's ability to assert this claim is expressly retained in Paragraph 11. He does not run afoul of Paragraph 3 by challenging the agreed-upon termination language in the Separation Agreement. Rather, he seeks relief for TIAA's alleged violation of Paragraph 3 by inserting additional language into the U-5, which was "neither accurate nor consistent with the language in Paragraph 3 of the Separation Agreement." (Compl. at 3, ¶ 21). Thus, his breach of contract claim is not barred by the release provisions of the Separation Agreement.

Second, TIAA asserts that, release notwithstanding, Boyd's Complaint fails to allege facts that would plausibly amount to a breach of the terms of the Separation Agreement with respect to the filing of the U-5 form.[1] Specifically, TIAA asserts that it did not breach the terms of the Agreement because the Agreement is silent as to the wording of the "Amendment Explanation" section of the amended U-5 and, regardless, that the given explanation comports with the agreed-upon language.

Although the Agreement does not specifically mention the Amendment Explanation section, Boyd's Complaint alleges that a central aspect of the Agreement was changing the language from the original U-5's language of "did not meet internal performance expectations" to the agreed-upon language of "disagreement regarding internal policy requirements." (Compl. at 2–3, ¶¶ 12, 20). Boyd alleges that TIAA did amend the Termination Explanation to the agreed-upon language but also placed additional language in the Amendment Explanation section—immediately following the Termination Explanation—continuing to claim that there was a "failure to meet internal policy expectations." (Compl. at 2–3, ¶¶ 12).

---

[1] Boyd's Complaint also alleges that TIAA breached the Separation Agreement by providing negative references about Boyd to other employers. (Compl. at 4). While TIAA denies this allegation, it concedes that—taken as true— it raises a plausible claim for relief.

This Court finds that Boyd's Complaint raises a plausible claim for a breach of contract. "In order for a breach of contract to be actionable it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long*, 588 S.E.2d 1, 4 (N.C. Ct. App. 2003). "The question of whether a breach of contract is material is ordinarily a question for a jury." *Charlotte Motor Speedway, Inc. v. Tindall Corp.*, 672 S.E.2d 691, 302 (N.C. Ct. App. 2009). Taking the factual allegations in Boyd's Complaint as true, a jury could find that by placing the language of "failure to meet internal policy expectations" into the U-5, just below the Termination Explanation section, TIAA's actions "substantially defeat[ed] the purpose of the agreement or [went] to the heart of the agreement, or can be characterized as a substantial failure to perform." *See Long*, 588 S.E.2d at 4.

Thus, TIAA's motion to dismiss Boyd's claim for breach of contract must be denied.

### C. Retaliation Under Title VII

Boyd's second cause of action is for retaliation under Title VII of the Civil Rights Act of 1964. Similar to its response to Boyd's breach of contract claim, TIAA argues (1) that Boyd's retaliation claim is barred by a release under the Separation Agreement, and (2) that even if Boyd did not release this claim, TIAA's actions—as alleged by Boyd's Complaint—do not establish a plausible claim of retaliation under Title VII.

First, TIAA asserts that it is released from retaliation claims made by Boyd under the Separation Agreement. Paragraph 11(a) of the Separation Agreement states, "Except as otherwise set forth in this Agreement, the Separation Payment in Paragraph 2 represents full and complete settlement in satisfaction of any and all claims you may have against TIAA arising on or before the date you sign this Agreement." (Separation Agreement, ¶ 11(a)). Additionally, the

7

Agreement releases and discharges TIAA "from any and all claims, in law or equity, which you ever had or now have regarding any matter arising on or before the date you sign this Agreement." (Separation Agreement, ¶ 11(a)).

Although Title VII retaliation claims fit within the category of claims waived in Separation Agreement, ¶ 11(a)(i), Boyd's claim did not arise "on or before the date" he signed the Agreement. Both parties agree—and the Agreement itself shows—that the Separation Agreement was signed on June 26, 2015. Taking Boyd's factual allegations as true, TIAA retaliated against him on July 22, 2015, when it filed the amended U-5 form, and at various other points in time after the amended U-5 had been filed by providing negative references to other employers. Prior to TIAA's actions on these dates, Boyd did not have a colorable claim for retaliation. Thus, the claims asserted by Boyd arose after the parties signed the Separation Agreement, and his claim for retaliation under Title VII is not barred by the release.

Second, TIAA asserts that the allegations in Boyd's Complaint fail to raise a plausible claim for retaliation under Title VII. Title VII § 704 makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (2012).

At the motion to dismiss stage in a Title VII case, a plaintiff need only "allege facts sufficient to state all the elements" of a prima facie case for retaliation. *Templeton v. First Tenn. Bank, N.A.*, 424 F. App'x 249, 250 (4th Cir. 2011) (per curiam) (unpublished). In order to raise a prima facie case, a plaintiff must allege facts supporting three elements: "(1) that [he] engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him];

and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).

Boyd's Complaint sufficiently alleges that he engaged in a protected activity. Title VII protects the activity of "employees who pursue their federal rights" by reporting or charging unlawful employment activity. *U.S. EEOC v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414, 417 (D. Md. 2006) (quoting *EEOC v. Bd. of Governors of State Colls. and Univs.*, 957 F.2d 424, 427 (7th Cir. 1992)). By filing two Charges of Discrimination against TIAA with the EEOC asserting racial discrimination, Boyd certainly pursued his federal rights. Thus, his conduct is clearly a protected activity. *See U.S. EEOC*, 444 F. Supp. 2d at 417 (using "retaliation against employees who . . . file an EEOC charge" as an example of a protected activity); *see also*, *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) ("Price's EEOC claim is protected activity . . . .").

Boyd also sufficiently alleges that TIAA took an adverse employment action against him. To satisfy Title VII, an adverse employment action must be material—one that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Thus, it must actually "produce[] an injury or harm." *Id.* at 67. Such action is prohibited whether taken against a current or former employee. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

Boyd alleges that TIAA retaliated against him by "interfering with his job search." (Compl. at 5, ¶ 39). Specifically, he alleges that TIAA falsely amended his U-5 form and provided negative referrals to prospective employers. (Compl. at 5, ¶ 39). Other courts have allowed cases to proceed past the motion to dismiss stage based on an allegation of negative

employment references. *See e.g.*, *Harris v. Ann's House of Nuts*, No. 4:14-cv-185, 2015 WL 3902017, at *4 (E.D.N.C. June 24, 2015); *Alberts v. Wheeling Jesuit Univ.*, No. 5:09-cv-109, 2011 WL 2132983, at *4 (N.D. W. Va. May 25, 2011). As alleged, the combination of the Amendment Explanation and TIAA's negative referrals led potential employers to deny employment to Boyd. Employers generally rely on references, and employers in the securities industry rely on information in the U-5 form in making hiring decisions. As a result, a "reasonable worker" might be dissuaded from making a charge of discrimination if he knows that he will likely be seriously hindered in his search for employment elsewhere as a result of making his charge. *See White*, 548 U.S. at 68. Thus, providing negative referrals and false information in a U-5 form are sufficient to qualify as adverse employment actions.

Finally, Boyd sufficiently alleges that TIAA's adverse employment action was caused by his decision to engage in protected activity. Alleging causation in a prima facie retaliation case is "less onerous" than meeting the but-for causation standard ultimately required to prove retaliation. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 251 (4th Cir. 2015). Close temporal proximity between when the employer learns of the protected activity and the adverse employment action can be enough to make a prima facie claim for causation. *Id.* at 253. Prima facie causation can also be found when the adverse employment action occurs "upon the employer's first opportunity" to carry out a harmful act to the employee. *Templeton*, 424 F. App'x at 251; *see also Price*, 380 F.3d at 213 (assuming without deciding that "an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case").

At this stage of the litigation, it is unclear exactly at what point TIAA first learned of Boyd's EEOC charges. However, it is clear that Boyd participated in an EEOC mediation with TIAA on June 16, 2015 and that TIAA submitted its revised U-5 form on July 22, 2015. This

close temporal proximity is sufficient to show causation. And to the extent that TIAA knew about the EEOC charges months beforehand, the allegation that TIAA took the adverse employment action at its "first opportunity"—when it filed the amended U-5 form—establishes sufficient prima facie causation to survive a motion to dismiss.

Thus, Boyd's Complaint sufficiently alleges all of the requisite elements of a prima facie claim for retaliation under Title VII and TIAA's motion to dismiss Boyd's claim for retaliation must be denied.

### III. CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim is hereby **DENIED.**

**SO ORDERED.**

Signed: September 20, 2017

Graham C. Mullen
United States District Judge